450 P.2d 492 (1969)
In the Matter of the Death of Ralph LOAGUE.
May Jewel LOAGUE, Petitioner,
v.
WATSON & WATSON, Employers Casualty Company, State Industrial Court of the State of Oklahoma, Respondents.
No. 42726.
Supreme Court of Oklahoma.
February 11, 1969.
K.D. Bailey, Okmulgee, for petitioner.
Ray Teague, Oklahoma City, G.T. Blankenship, Atty. Gen., for respondents.
*493 LAVENDER, Justice.
A trial judge of the State Industrial Court awarded the petitioner herein $13,500.00 compensation for the death of her husband. Ralph Loague. The employer, Watson & Watson, and its insurance carrier, the respondents in that court (and that term, as used herein, refers only to them), appealed to the State Industrial Court, sitting en banc, and that court denied the petitioner's claim by vacating the order of the trial judge. The widow (herein called the "claimant") asks this court to vacate the order of the Industrial Court en banc.
On April 1, 1966, Ralph Loague was working on an oil well as a driller in the employ of Watson & Watson. On that day, gas escaping from the well ignited and exploded, and Loague, who was near the outer edge of the fire area at the time, sustained rather minor (first- and second-degree) burns about his face, ears, neck, and both hands. He was hospitalized immediately after the accident and was released from the hospital, by his attending physician, on April 3, 1966. June 15, 1966, was his sixth office call on the same physician for treatment of his hands. The new skin on his hands was tough enough that the physician released him for his regular work, and he returned to work on June 18, 1966. He worked regularly for the same employer until August 3, 1966, when he consulted another doctor about a sore throat. On that day, that doctor found that he had six defective teeth (which were extracted by a dentist the next day, as recommended) and some respiratory trouble, in addition to acute tonsilitis, and, according to unconflicting medical testimony, laboratory reports on samples taken that day established the existence of diabetes. On August 10, 1966, he was admitted to another hospital, in a comatose state, which the medical experts agreed was a diabetic coma. He died about five o'clock the following morning, August 11, 1966, and, according to uncontradicted medical evidence and testimony, he died as the result *494 of diabetes and complications arising therefrom.
At the commencement of the hearing before the trial judge, the parties stipulated that, on April 1, 1966, Ralph Loague was employed by Watson & Watson in an occupation covered by the Workmen's Compensation Law and, on that date, sustained an accidental personal injury arising out of and in the course of his employment, and that the employer's insurance carrier had paid all of his medical expenses up to June 18, 1966, as well as compensation, in the proper amount, for temporary total disability from April 1, 1966, to June 18, 1966. In making such stipulation, the respondents reserved only their specific denial (set forth in their answer) that Ralph Loague's death was in any way due to, or caused by, his injuries of April 1, 1966, as alleged in the claim for compensation. At that hearing, the respondents offered no evidence to controvert evidence introduced by the claimant which would sustain her claim that she was a dependent and therefore suffered a pecuniary loss upon the death of Ralph Loague.
If there was any conflict in the evidence or the reasonable inferences to be drawn therefrom, it involved whether there was established a causal connection between Ralph Loague's injuries of April 1, 1966, and his death from diabetes and complications arising therefrom. And, under the record, the stipulations of the parties and the evidence, that was the ultimate issue of fact, and the only ultimate issue of fact presented for determination by the trial judge or by the Industrial Court sitting en banc.
In the trial judge's order awarding the $13,500.00 in death benefits to the claimant, the only finding of fact is a finding in favor of the claimant, on that ultimate issue of fact.
Omitting the formal portions and the signatures, the order on appeal by the State Industrial Court en banc (which is signed by all of the judges of that court except the trial judge) states only that:
"On October 2, 1967, this cause comes on for hearing on appeal by the undersigned Judges, sitting en banc, from the order of the trial. Judge heretofore entered on Aug. 23, 1967.
"After reviewing the record in the case, and being fully advised in the premises, said Judges find that said order should be vacated and denied.
"It is theretofore ordered that the order of the Trial Judge heretofore entered in this case on Aug. 23, 1967, be and the same hereby is vacated and denied."
One of the two contentions here made by the claimant is that, because the order of the Industrial Court en banc contains no finding of fact upon which it bases its conclusions and order that the award made by the trial judge should be vacated and the claim denied, the order is so indefinite and uncertain that it must be vacated under cases such as Brookshire v. Knippers Plumbing Company et al. (1964), Okl., 390 P.2d 887, and Leffler v. McPherson Brothers Transport et al. (1964), Okl., 396 P.2d 491, wherein this court vacated substantially similar orders of the Industrial Court en banc on the basis of the following rules set forth in its syllabi to those cases:
"It is the duty of the State Industrial Court to make specific findings of the ultimate facts responsive to the issues as well as the conclusions of law upon which an order is made granting or denying an award for compensation. (Emphasis supplied here)
"Where the findings of fact and conclusions of law of the State Industrial Court are too indefinite and uncertain for judicial interpretation this court, on review, will vacate the order for further proceedings."
However, the cases cited above are not in point herein, for the reason that, in each of them, this court pointed out that, since, under the evidence, more than one issue of fact was presented for determination by the Industrial Court en banc, it was impossible *495 to determine, from the order, which of such issues that court had found against the claimant, whereas, in the present case (as mentioned above), only one issue of ultimate fact was, under the record, stipulations and evidence, presented for determination by the Industrial Court. Logically, therefore, the order vacating the award of compensation and denying the claim (which is the way we interpret the order under attack herein) could only be based upon a negative answer to the single question presented for determination. The present situation is substantially the same as the situation in McMurtrey v. American Association of Petroleum Geologists et al. (1963), Okl., 383 P.2d 215, wherein this court refused to vacate an order of the Industrial Court en banc, which without stating any factual basis therefor, vacated an award of death benefits by the trial judge and denied the claim for such benefits. This court, in refusing to vacate such order, pointed out that, under the record and the evidence in that case, only one issue of fact was presented to the Industrial Court for determination, and concluded that in those circumstances, the claimant could not fail to comprehend that the court's conclusion and order denying her claim for compensation was based upon a negative answer to the single question of fact so presented for determination. The same distinction between a multiple-issue situation and a single-issue situation was made by this court in Wiles v. City of Stroud et al. (1964), Okl., 395 P.2d 404, 406.
On the basis of the McMurtrey case, we now hold that, where, under the record and the evidence, only one issue of ultimate fact was presented for determination by the State Industrial Court sitting en banc, so that, in the circumstances, it is clear that the conclusion of law and order of that court that an award of compensation by a trial judge of that court be vacated and the claim for compensation be denied could only be based upon a negative answer to the single question of ultimate fact so presented, this court, on review, will not vacate such order for failure of the Industrial Court to make specific findings of the ultimate facts responsive to the issues as well as the conclusions of law upon which the order is based.
Claimant's other contention is that there is no reasonable or competent evidence to support the order of the Industrial Court en banc, which has the effect of denying her claim for death benefits, and that all reasonable men would conclude from the evidence that her husband's diabetes (which, with complications arising therefrom, caused his death) was the result of worry which, in turn, was brought about by his injuries on April 1, 1966, and that, therefore, his death was the result of those injuries.
We do not agree.
In a workmen's compensation case, it is not the province of this court to weigh the evidence to determine where the preponderance lies, for the State Industrial Court is the sole and ultimate arbiter for determining the credibility of witnesses, including medical witnesses, and the weight to be accorded their testimony [Lee Way Motor Freight, Inc., et al. v. Highfill et al. (1967), Okl., 429 P.2d 745, 747]. Findings of fact by the State Industrial Court are conclusive and binding on this court where there is any competent evidence reasonably tending to support such findings [Riley v. Clark Brothers Well Service Company et al. (1958), Okl., 321 P.2d 956; Lacy v. Pratt Food Stores et al. (1959), Okl., 347 P.2d 788]; and, in such an instance, the decision of the Industrial Court, based upon such findings of fact, will not be disturbed by this court on review [Howland v. Douglas Aircraft Company, Inc., et al. (1968), Okl., 438 P.2d 5].
Under the provisions of 85 O.S. 1961, § 11, the compensation provided therein, for either the disability or the death of an employee covered by the Workmen's Compensation Law, is payable only if the disability or death, as the case may be, results from an accidental personal injury arising out of and in the course of the employee's employment. In Ada *496 Coca-Cola Bottling Company et al. v. Snead et al. (1961), Okl., 364 P.2d 696, we said,
"An injury does not arise out of the employment within the meaning of the Workmen's Compensation Law of this state, unless it results from a risk reasonably incident to the employment, and unless there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."
In the Ada Coca-Cola Bottling Company case, supra, the employee sustained a work-connected injury as a result of which he was unable to financially provide for his family. This resulted in the employee worrying a great deal  which, in turn, according to some medical evidence  resulted in the employee suffering a fatal heart attack. We noted that "worry", at least in the sense of worrying over one's inability to provide for one's family as distinguished, perhaps, from worrying over the amount of work to be done for one's employer, or the method of doing the work, is simply not a risk "reasonably incident to the employment" within the meaning of the rule (see above quote from the case). We cited Novak v. McAlister (1956), Okl., 301 P.2d 234.
In the case before us the medical evidence fairly established that Mr. Loague died from "Acidotic Coma  due to Diabetes Mellitus." It was also shown that  at least in Mr. Loague's case  the triggering cause of the development of diabetes was an emotional strain suffered by him as a result of being off work while recovering from his job-connected burns to his face and hands. In other words, Mr. Loague, according to the testimony of his surviving wife, following his job-connected injuries, became "just a nervous wreck because we owed bills and everything like that."
The claimant's medical witness based his conclusion that the decedent's job-connected injuries constituted a "precipitating" factor to the development of the fatal diabetes and was therefore a cause of Mr. Loague's death, on a "series" of connected events or occurrences. It was the doctor's testimony that the burns to the employee's hands and face, while rather minor, nevertheless caused him to lose some time from work; that possibly, at the time of the injury, the employee was what is known as a "pre-diabetic," that is, a person who has the potentiality of contracting the disease because of hereditary factors, but who has not yet developed objective symptoms of it. The doctor testified  and it was not seriously disputed  that emotional stress or worry in such an individual may trigger or precipitate an onset of the disease. It is quite evident that unless worrying over one's inability to work and earn wages because of being temporarily disabled as a result of an on-the-job injury is a risk "reasonably incident" to the employment, the consequences of such worrying even if those consequences be the death of the employee are simply not covered by the Workmen's Compensation Act. We know of no case holding the consequences of emotional stress, under such circumstances, to be compensable.
Opposed to the evidence of claimant's doctor, a medical witness testified for the Respondent that it would be "so remote as to be very improbable," that there was any connection between the employee's injuries of April 1, 1966, and his death from diabetes on August 11, 1966. This particular witness appears to have examined  as a predicate to reaching his conclusion  much, if not all, of the same medical information, reports, etc., which were examined by claimant's medical witness. This last mentioned witness also testified that it "was distinctly possible" that the decedent's cause of worry, inability to work and support his family, was removed when the latter returned to work for his employer on June 15, 1966, and worked some six weeks, regularly, and that when he then contracted an upper respiratory infection followed *497 soon after by having six teeth extracted that the diabetes may have been "again precipitated (this time) by infection."
To say the least, evidence is conflicting as to the cause of Ralph Loague's death. Under such circumstances, it is not within the prerogative of this court to reverse the findings of the trial tribunal.
Order of State Industrial Court sitting en banc sustained.
IRWIN, C.J., BERRY, Vice C.J., and DAVISON, JACKSON, HODGES, and McINERNEY, JJ., concur.
WILLIAMS, J., concurs in result.