Kɪᴍ Dᴇᴍᴀʀs, Claimant, *Appellant,* v. Rɪᴄᴋᴇʟ Mᴀɴᴜғᴀᴄᴛᴜʀɪɴɢ Cᴏʀ-ᴘᴏʀᴀᴛɪᴏɴ, Respondent, and Gᴜʟғ Iɴsᴜʀᴀɴᴄᴇ Cᴏᴍᴘᴀɴʏ, Insur-ance Carrier, and Kᴀɴsᴀs Wᴏʀᴋᴍᴇɴ's Cᴏᴍᴘᴇɴsᴀᴛɪᴏɴ Fᴜɴᴅ, *Ap-pellee.*

(573 P.2d 1036)

Opinion filed January 21, 1978.

*George E. McCullough,* of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for the appellant.

*Philip Shaffer,* of Salina, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fʀᴏᴍᴍᴇ, J.: Kim Demars, a former employee of Rickel Man-ufacturing Corporation, appeals from a judgment of the district court setting aside an examiner's award in his favor in a workers' compensation case. The award had been entered against the Kansas Workmen's Compensation Fund for temporary total dis-

ability compensation at the rate of $95.20 per week, commencing December 31, 1974, and continuing until further order of the examiner. In addition medical expenses had been allowed. No review by the Kansas Workers' Compensation Director was requested and after ten days the examiner's award became the director's award.

The Kansas Workmen's Compensation Fund, formerly the second injury fund, was impleaded in the case and the examiner found that claimant's accidental injury would not have occurred but for his pre-existing back condition. Accordingly under K.S.A. 44-567 as amended the award in its entirety was ordered paid from the workmen's compensation fund. On appeal to the district court no issue was raised concerning the responsibility of the fund if the award was upheld.

The district court in setting aside the director's award concluded that claimant's disability did not result from an accidental injury or injuries while working on the job for the respondent, Rickel, but resulted solely from a physical condition present when he was employed. Claimant had a congenital back defect, dual spondylolisthesis, and a nonunion of his back which followed a fusion operation. So the question is whether the disability resulted from personal injury or injuries arising out of and in the course of his employment. The claimant contends the district court erred as a matter of law in disregarding the uncontradicted evidence which was reasonable and probable. See *Anderson v. Kinsley Sand & Gravel, Inc.,* 221 Kan. 191, 558 P.2d 146.

At the hearing before the examiner the claimant and Dr. Roy B. Coffey, an orthopedic surgeon, were the only witnesses. Both testified on behalf of claimant. The facts are not in dispute. Kim Demars was born with a back condition referred to as " a dual level spondylolisthesis." While in high school he slipped and fell down a stairway. The resulting injury necessitated a back operation which was performed by Dr. Coffey. The operation was not entirely successful for the fusion did not form a solid union. However, Demars returned to school, continued running on the track squad, and had no further trouble with his back. The operation was performed in 1972.

In March, 1974, Demars was employed by Rickel Manufacturing Corporation for work requiring heavy lifting. On his job application Demars advised the company that he had a back

injury in high school and had a spinal fusion. He was accepted for work and no physical examination was required by the company before his employment began. After he had worked for a month and a half in his job, which required heavy lifting, he began to experience some soreness and pain in his back. He continued work until sometime in July when he suffered a non-work-connected injury to his back while checking the pressure in his car tires. He was hospitalized and remained in traction for ten days. He recovered and was released to return to work by the end of August. From the middle of September to the end of December, 1974, his back became progressively worse. Demars testified:

"Q. Progressively, tell us what happened up through the last days you worked.

"A. Well, I would go to work and the more I would bend over and move, the more my back would start hurting. Each time I would bend over and pick something up, have any weight, I would start to raise up and it would just have kind of a catch in there and then sharp pains. Then finally it got to where I couldn't do it at all and I went and seen Dr. Coffey beforehand and he gave me some pain pills to take while I was at work. My foreman at work knew I was taking the pain pills.

"Q. Did you tell your foreman at work what was causing you to have to take the pain pills?

"A. Yes, it was the work that I was doing, the bending over, picking up the heavy materials."

By the end of December Dr. Coffey decided a second operation was necessary. This operation was scheduled for January 13, 1975. However, on December 31, the last day Demars was scheduled to work before the operation, he was injured when he raised up while under a machine. The blow to his back knocked him to the ground and he received a cut on his back which left a two inch scar.

The second back operation was completed on January 13. The fusion was apparently successful but because of the congenital condition of the back and its aggravation from heavy lifting Dr. Coffey released Demars for work with a 15 pound weight limitation. Rickel, the former employer, could not use Demars under that condition so he was released from his job. Dr. Coffey advised him that in the future he would be unable to work in any job where heavy lifting was required. Demars then went to Kansas City and enrolled in a vocational rehabilitation program in the field of electronics.

In *Poehlman v. Leydig,* 194 Kan. 649, 400 P.2d 724, it is

pointed out that the risk of employing a workman with a pre-existing disability is upon the employer. This rule may be traced back through *Cody v. Lewis & West Transit Mix,* 186 Kan. 437, 351 P.2d 4; *Johnson v. Skelly Oil Co.,* 181 Kan. 655, 312 P.2d 1076; and *Conner v. M & M Packing Co.,* 166 Kan. 98, 199 P.2d 458. The facts in *Cody* are strikingly similar to those of our present case. Cody had what was referred to as second degree spondylolisthesis. After his first operation there was a failure of fusion. Two years later while engaged in heavy labor he tore the scar tissue which had built up around the area of the attempted fusion. The aggravation of the pre-existing condition was held to justify an award for further disability.

The risk of employing a workman with a pre-existing disability is upon the employer, and when a workman who is not in sound health is accepted for employment and a subsequent industrial injury aggravates his condition, resulting in disability, he is entitled to be fully compensated for the resultant disability. (*Chinn v. Gay & Taylor, Inc.,* 219 Kan. 196, 202, 547 P.2d 751.)

Dr. Coffey testified as to the examinations and operations performed. In response to a hypothetical question he stated that Demars probably suffered a series of injuries while lifting heavy objects on the job which injuries aggravated his pre-existing condition and resulted in temporary total disability prior to the second operation. His present physical condition would never permit him to return to work requiring heavy lifting. Dr. Coffey explained that an increase in activity, the lifting and stooping on the job, causes "scar tissue between the irregular jagged non-union bone and you can be worse than you ever were before." This may increase the pain in the nonunion to the point that some day the nonunion has to be repaired. He stated: "There is no doubt that his type of job aggravated his non-union." He testified that neither the non-work injury, received while Demars was checking his tires, nor the injury to his back from raising up under a machine materially contributed to his disabling physical condition which existed prior to his second operation.

In setting aside the examiner's award in this case the district court said: " . . . the Court feels that this case is governed by the decision in Boeckmann v. Goodyear Tire and Rubber Company, 210 Kan. 733." The court concluded the claimant's alleged injuries and disabilities did not result from personal

injury by accident arising out of and in the course of his employment.

The claimant contends the court's reliance on *Boeckmann v. Goodyear Tire & Rubber Co.,* 210 Kan. 733, 504 P.2d 625, was misplaced. It was cited by the court as illustrating what constitutes a noncompensable disability. In *Boeckmann* the claimant had a history of degenerative arthritis of the hips. He underwent surgery. Three years later he noticed the pain in his right hip was becoming worse. He continued to work as a special classifier and inspector of truck and tractor tires. Six years after his surgery he began experiencing incidents of disabling back pain while at work. He was on retirement disability when his claim was heard. He was denied compensation. His doctor attributed the claimant's work disability to the arthritic changes in his hips. The doctor was of the opinion the incidents of disabling back pain while at work did not result in any difference in the condition of his hips.

In affirming the denial of compensation in *Boeckmann* this court noted there was no evidence that the origin of claimant's disability was from his work. The degenerative arthritis had been a progressive process and would have continued to get worse from everyday activity whether on or off the job. Every time the claimant bent over to tie his shoes, walked to the grocery store or got up to adjust his television set there would be an aggravation of his condition.

In our present case the claimant's condition from the congenital back defect and the nonunion was stable prior to entering this particular job market. It was not a condition which in and of itself would degenerate or worsen without the heavy lifting. We do not believe the holding in *Boeckmann* is dispositive of our present case.

In *Winkelman v. Boeing Airplane Co.,* 166 Kan. 503, 203 P.2d 171, the claimant suffered a loss of hearing while employed at an indoor pistol range. It was held that the repeated explosions of .38 caliber ammunition while in close proximity resulted in personal injury by accident which arose out of and in the course of employment. The disability resulting therefrom was held to be compensable under the Workmen's Compensation Act. The factual situation is not the same as in our present case for in *Winkelman* there was an outward and discernible force or series

of forces to which the resulting disability could be traced. On the question of causation the facts of our present case fall somewhere between *Winkelman* and *Boeckmann.*

It has long been the rule that injury to a worker by a strain sustained in performing the usual tasks in the usual manner may constitute an accident within the meaning of the worker's compensation act even though there be no outward and discernible force to which the resultant disability can be traced. (See *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793.) A disability, whether occurring as a result of a single injury or a series of similar injuries, all occurring in the course of the employment, may be compensable. (*Winkelman v. Boeing Airplane Co.,* supra, p. 508.)

The words "accident" and "injury" are defined in K.S.A. 1977 Supp. 44-508 as follows:

"(d) 'Accident' means an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. The elements of an accident, as stated herein, are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workmen's compensation act that the employer bear the expense of accidental injury to a worker caused by the employment.

"(e) 'Personal injury' or [and] 'injury' mean any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of the worker's usual labor. It is not essential that such lesion or change be of such character as to present external or visible signs of its existence."

We note under the definition of accident it is not necessary that an accident be accompanied by a manifestation of force, and it may refer to a series of events. Under the workers' compensation act any lesion in the physical structure of a worker causing harm may be a personal injury if it occurs under the stress of usual labor. It is not essential that external or visible signs of its existence be manifest.

We need not re-examine the testimony of Dr. Coffey and Kim Demars in detail. Both testified for the claimant and both testified that a series of incidents occurred affecting claimant's physical structure and causing harm each time the worker lifted a heavy weight. The incidents were not manifested by external signs, only by internal pain. This series of lifting incidents aggravated a pre-existing condition and caused the disability which required the second operation. Aside from the erroneous answer entered

inadvertently on the hospital insurance form by Dr. Coffey, which he later clarified, there is no contradicting evidence in the record.

Uncontradicted evidence which is not improbable or unreasonable cannot be disregarded by a district court in a workers' compensation case unless it is shown to be untrustworthy; and such uncontradicted evidence should ordinarily be regarded as conclusive. See *Berry v. Wondra,* 173 Kan. 273, Syl. 3, 246 P.2d 282; and *Anderson v. Kinsley Sand & Gravel, Inc.,* supra, Syl. 2.

The district court erred in the present case in disregarding the uncontradicted evidence bearing on causation which evidence was not shown to be improbable, unreasonable or untrustworthy. The court further erred in concluding that the present case was governed by the decision in *Boeckmann v. Goodyear Tire & Rubber Co.,* supra. Therefore we conclude as a matter of law the uncontradicted evidence in this case bearing on causation required an award in favor of the claimant.

The judgment of the district court is reversed and the award of compensation as written by the examiner and statutorily adopted as the director's award is reinstated.