Argued and submitted May 25, affirmed October 12, 1983

In the Matter of the Compensation of
James R. Allison, Sr., Claimant.

ALLISON,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(81-05265; A25972)

670 P2d 207

Robert K. Udziela, Portland, argued the cause for petitioner. On the brief were William H. Schultz, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

NEWMAN, J., dissenting.

## VAN HOOMISSEN, J.

The question in this workers' compensation case is the extent of claimant's disability. The referee awarded permanent total disability. On review, the Workers' Compensation Board concluded that claimant had sustained 60 percent unscheduled right shoulder disability. We review *de novo* and affirm.

Claimant sustained a compensable injury to his right shoulder when he fell on a pile of lumber. He underwent two surgeries. His treating physician concluded that his right shoulder and arm pain were caused by cervical osteoarthritis and disc disease, resulting in significant disability of the shoulder. He did not feel that claimant could return to carpentry, his occupation for 30 years.

Claimant complains of severe pain and physical limitations. The referee and the Board both found that his complaints substantially exceeded any complaints made by him to his treating physician and both disregarded his testimony on that point. We give great weight to the referee's findings of credibility. *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), *rev den* (1971). Accordingly, we evaluate claimant's disability based on the medical and vocational reports without regard to his testimony about his pain and limitations.

Claimant's disability is isolated in his right shoulder and arm. While severe, it does not affect his ability to use the rest of his body. The Board found that the objective medical findings alone did not warrant a finding of permanent total disability. We agree.

There are two types of permanent total disability: one arising entirely from medical or physical incapacity, and the other arising from conditions of less than total medical or physical incapacity plus additional conditions such as age, education aptitude, adaptability to nonphysical labor, and mental and emotional condition, which together result in permanent total disability. *Wilson v. Weyerhaeuser,* 30 Or App 403, 567 P2d 567 (1977). Unless a claimant shows that he comes within the first type of total disability, making it futile to attempt to find work, he must make reasonable efforts to

obtain employment before an award of permanent total disability will be granted. ORS 656.206(3);[1] *see Home Ins. Co. v. Hall,* 60 Or App 750, 654 P2d 1167 (1982), *rev den* 294 Or 536 (1983); *Butcher v. SAIF,* 45 Or App 313, 608 P2d 575 (1980).

■   We agree with the Board's conclusion that claimant has not made reasonable efforts to find suitable work. The record reflects that, while he appeared to cooperate in placement efforts, he did not follow through on his vocational counselor's suggestions. He placed unreasonable wage requirements on the jobs he would accept, and he rejected employment opportunities that he could perform as being beyond his physical or medical capabilities. As a result of his non-cooperation, his file with Vocational Planning Consultants was closed. He was also interviewed at the Callahan Center, which reported that it was "unable to determine his physical tolerance for more specific job possibilities because [he] refused to stay at the Center and complete an evaluation." His trips to the employment office and his CETA inquiries appear, in light of his history with employment consultants, to be little more than perfunctory attempts to satisfy the statutory requirement that he seek work.

Affirmed.

**NEWMAN, J.,** dissenting.

The majority affirms the order of the Workers' Compensation Board. I respectfully dissent and would reinstate the referee's order that found claimant permanently and totally disabled.

Claimant is a 62-year-old man. He was 58 at the time of the accident. While employed as a construction carpenter in March, 1979, he suffered an injury to his right shoulder. After conservative treatment, he underwent surgery to remove an inch from the right distal clavicle. A further examination showed a rotator cuff tear. The claim was first closed in May, 1980, with an award of 35 percent scheduled loss of the right arm. The claim was reopened, and surgery was performed

---

[1] ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

again. Claimant was then determined to be medically stationary, and the claim was again closed with an additional award of 35 percent for unscheduled right shoulder disability.

The referee, however, found:

"Based upon the medical evidence, without regard to claimant's testimony, the objective medical findings of Dr. Sulkosky support a finding of severe unscheduled right shoulder impairment. Although there might be a field of endeavor in which claimant could find gainful and suitable employment were it not for the recession, numerous areas of endeavor are precluded because the market for one-armed workers is limited in the best of times. In view of the prevalent economic climate the referee is unable to perceive any possibility of claimant obtaining suitable, gainful employment in the foreseeable future and it is the opinion of the referee claimant is permanently and totally disabled."

The Board found that the referee erred in basing an award for a worker's loss of wage earning capacity "on the economic stability or instability of the market place" and reduced the award to 60 percent.

Of course, claimant must demonstrate his inability to sell his services on a regular basis in a "hypothetically normal labor market." *Wilson v. Weyerhaeuser,* 30 Or App 403, 408, 567 P2d 567 (1977). I agree with claimant's position, however, that the error on the referee's part was "harmless," because, regardless of the referee's reference to the recession, claimant is incapable of regularly performing work at a gainful and suitable occupation and is permanently and totally disabled because of his physical condition combined with his limited personal resources. *See Wilson v. Weyerhaeuser, supra; Looper v. SAIF,* 56 Or App 437, 642 P2d 325 (1982); *Morris v. Denny's,* 50 Or App 533, 623 P2d 1118 (1981); *Butcher v. SAIF,* 45 Or App 313, 608 P2d 575 (1980).

Although the referee and the Board found that claimant's testimony about his limitations conflicted with the reports of his treating physician, there is no dispute that claimant suffered a severe injury to his right shoulder. There is no dispute that, because of pain, he cannot sleep with regularity and cannot lie on his right side. There is no dispute but that his grip strength in his right hand is seriously diminished. There is also no dispute but that he is on chronic

pain medication, that his wife helps him dress, takes off his boots, combs his hair and cuts his food, that he no longer can hunt, fish or work in the yard and that he does not help with any cooking, cleaning or housework.

Dr. Sulkosky, the treating physician, reported that claimant is "subjectively completely disabled with regards [sic] to his right arm." It was his opinion that claimant cannot return to construction carpentry. The Callahan Center also concluded that claimant suffers from considerable functional overlay and an overprotective attitude.

I conclude on this record that claimant's physical disability and his non-medical limitations prevent him from obtaining suitable and gainful employment. He is 62 years old and has a sixth or seventh grade education. He has worked for 30 years only as a carpenter, has no supervisory or management experience, has marginal reading ability, suffers from poor vision and is unable to write due to restricted right arm and elbow movement. He has cooperated with vocational rehabilitation efforts but has not found suitable and gainful employment. Because of his limited educational background, his adaptability to non-physical labor is low.

The majority opinion asserts that the referee "disregarded" claimant's testimony with respect to his pain and physical limits. The majority then states that "we give great weight to the referee's findings of credibility * * *. Accordingly, we evaluate claimant's disability based on the medical reports without regard to his testimony." The referee's opinion does not support the majority's extreme response. He clearly accepted as credible much of claimant's testimony, much of which is not disputed. The referee stated that, without regard to claimant's testimony, the objective medical evidence showed a severe right shoulder impairment. He did *not* evaluate the disability "without regard" to claimant's testimony, and neither should this court. Claimant is a person whose tolerance for pain appears from the record to be lower than some. We should not, because of his subjective, as well as objective, response to a severe injury, sustain the board's reversal of the referee's finding of permanent and total disability.

The majority finds, as did the Board, that claimant has not made reasonable efforts to obtain employment. The

referee did not so find. Claimant has continued to seek employment through vocational rehabilitation programs as well as on his own. The Vocational Rehabilitation Division suggested that claimant investigate hotel/motel management. He applied to several motels without success. Finally he was encouraged by a chain that would train him, but the description of the job duties demonstrated that the job was beyond his physical capacity because it required heavy lifting. He also has continued to make himself available for a position as a security guard, although it is questionable that he can perform duties that require reading and writing. He has pursued employment possibilities available to him but has been unable to find gainful employment. Under the circumstances, he has made reasonable efforts to locate work and has carried his burden of proving that, due to physical disability and limited personal resources, he is permanently incapacitated from regularly performing work at a suitable and gainful occupation in a hypothetically normal labor market. *Wilson v. Weyerhaeuser, supra; Looper v. SAIF, supra; Morris v. Denny's, supra; Butcher v. SAIF, supra;* ORS 656.206(3).